UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GARY C. WALKER                                        CIVIL ACTION

VERSUS                                                NO: 10-4389

PELICAN PUBLISHING COMPANY, INC.                      SECTION: "A" (4)
ET AL

**ORDER AND REASONS**

Before the Court is a **Motion for Judgment on the Pleadings (Rec. Doc. 13)** filed by Defendants, Pelican Publishing Company, Inc. ("Pelican") and Dr. Milburn Calhoun ("Calhoun"), a **Motion for Summary Judgment (Rec. Doc. 19)** filed by *pro se*, Plaintiff, Gary C. Walker ("Plaintiff"), and a **Cross Motion for Summary Judgment (Rec. Doc. 29)** filed by Pelican and Calhoun. The motions, set for hearing on July 20, 2011, are before the Court on the briefs without oral argument. For the reasons that follow, the Motion for Judgment on the Pleadings is **GRANTED**, the Motion for Summary Judgment is **DENIED**, and the Cross Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

The instant case arises out of royalty payments allegedly owed under a publishing agreement. In 2003, Plaintiff, an author of numerous Civil War books, contacted Pelican about publishing his books. (Defs.' Mem. Supp. Mot. Summ. J. 2.) Although negotiations fell through, Plaintiff contacted Pelican again in 2007 to see whether an agreement could be reached to publish his works. (*Id.*) Plaintiff negotiated directly with Pelican's President, Dr. Milburn Calhoun. (*See* Am. Compl.) During initial negotiations, Calhoun allegedly estimated that Plaintiff's royalties would amount to

1

between $5,000 and $6,000 per year with an expectation of increased sales and revenue. (Pl.'s Mem. Supp. Mot. Summ. J. Ex. G.) Calhoun stated that these figures were rough estimates. (*Id.*) Calhoun then requested that Plaintiff provide figures for his existing inventory supply. (*Id.* at Ex. J.) After reviewing Plaintiff's inventory figures, Calhoun submitted a proposal on behalf of Pelican to Plaintiff on July 27, 2007. (Calhoun Aff. Ex. 1, June 10, 2011.) In the proposal, Pelican offered to acquire eight titles written by Plaintiff in addition to Plaintiff's existing inventory supply in exchange for royalty payments paid to Plaintiff on the sale of the books. (*Id.*) Pelican also offered Plaintiff a 50% resale discount in exchange for Plaintiff's commitment to sell the books at re-enactments, some gift shops, and other venues. (*Id.*)

After months of negotiations, Plaintiff entered into a publishing contract with Pelican on January 1, 2008. (Pl.'s Mem. Supp. Mot. Summ. J. Ex. A.) Pursuant to the contract, Pelican agreed to pay Plaintiff royalties with a minimum annual royalty payment of $4,000. (*Id.*) In exchange, Plaintiff granted Pelican the right to publish, republish, reprint, and sell his eight books as well as distribute his existing stock of books. (*Id.*) Under Section 5 of the contract, Plaintiff agreed to deliver all existing copies of his works to Pelican's warehouse on or before December 2007. (*Id.*) Pursuant to Section 6 of the contract, Plaintiff agreed to have all copies of his works purchased through Pelican. In addition, under Section 14 of the contract, Pelican agreed to furnish ten copies of Plaintiff's published works without any charge. (*Id.*) Plaintiff, however, could obtain additional copies at a discount of 40% off the suggested retail price or at a 50% discount if individual titles were purchased in case lots. (*Id.*) Finally, Section 15 of the contract allowed Pelican to deduct permission fees and other expenses paid by Pelican on Plaintiff's behalf from Plaintiff's royalties as well as deduct the cost of books sold to Plaintiff from Plaintiff's royalties. (*Id.*)

In July of 2008, Plaintiff received a check in the amount of $2,328.82, marking the royalty payment period from November 1, 2007 through April 30, 2008. (*Id.* at 6; Perry Aff., June 2011.) On June 15, 2010, Plaintiff received another check for $1,704.92, marking the royalty payment period from November 1, 2009 through April 30, 2010. (Pl.'s Mem. Supp. Mot. Summ. J. 6; Perry Aff.) Plaintiff also received a check in the amount of 2,000, marking the royalty payment period from November 1, 2010 through April 30, 2011. (Perry Aff.) According to Pelican, Plaintiff's royalty payments were offset by the price of books that Plaintiff allegedly retained in violation of the contract. (Defs.' Mem. Supp. Mot. Summ. J. 2.)

On November 22, 2010, Plaintiff filed suit against Pelican and Calhoun as Publisher, alleging breach of contract and fraud. (Compl.) Pelican and Calhoun then filed an Answer denying the allegations. (Answer.) On March 9, 2011, Plaintiff amended his Complaint to name Calhoun personally as an additional defendant. (Am. Compl.) As a result, Pelican and Calhoun filed the instant motion for judgment on the pleadings, arguing that the claims against Calhoun in his personal capacity should be dismissed because a corporate officer is not liable for a corporation's obligations. (Defs.' Mem. Supp. Mot. J. Pleadings 3-4.) Pelican and Calhoun also contend that the personal capacity claims asserted against Calhoun should be dismissed because Plaintiff has failed to allege specific facts that would give rise to a claim for fraud. (*Id.* at 4.) In response, Plaintiff argues that he has stated a claim for fraud against Calhoun in his personal capacity because Calhoun failed to pay Plaintiff the minimum royalty payments that he had promised and because Calhoun charged Plaintiff for inventory that Plaintiff did not agree to deliver to Pelican. (Pl.'s Mem. Opp'n to Mot. J. Pleadings 4-5.) Subsequently, Plaintiff filed the instant motion for summary judgment, arguing that he is entitled to summary judgment on his breach of contract and fraud claims against Pelican

and Calhoun. (Pl.'s Mem. Supp. Mot. Summ. J. 2.) Plaintiff asserts that he is entitled to relief because Pelican breached the contract by failing to pay the minimum $4,000 annual royalty payments as promised. (*Id.*) Plaintiff also contends that Pelican's accounting system is inaccurate. (*Id.* at 4.) In addition, Plaintiff asserts that Calhoun committed fraud because he induced Plaintiff to sign the contract by estimating that Plaintiff would receive between $5,000 and $6,000 per year in royalty payments and by agreeing to pay Plaintiff at least $4,000 annually in royalty payments. (*Id.* at 5.) Plaintiff also contends that he cannot be charged for his 2007 inventory supply because this inventory supply predates the signing of the contract and because he made no guarantees to deliver this inventory supply to Pelican. (*Id.* at 6-8.) In opposition and in its cross motion for summary judgment, Pelican argues that it is not liable for breach of contract because it was allowed to withhold royalty payments under Section 15 of the contract based on Plaintiff's failure to ship his remaining inventory supply to Pelican as provided in Section 2(e) and Section 5 of the contract. (Defs.' Mem. Supp. Mot. Summ. J. 5.) Pelican also contends that Plaintiff has failed to assert a fraud claim against Pelican given that Pelican complied with the terms of the contract. (*Id.* at 6.)

## II. STANDARD OF REVIEW

Initially, the Court notes that briefs submitted by *pro se* litigants are construed liberally. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam). As a result, courts "apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Id*. Notwithstanding the liberal treatment afforded to *pro se* litigants, *pro se* litigants still must comply with the following standards for judgment on the pleadings and summary judgment.

**A. Motion for Judgment on the Pleadings Standard**

A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (parenthetical in original) (quotations, citations, and footnote omitted). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* at 545. "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *David v. Assumption Parish Police Jury*, No. Civ. A. 02-765, 2003 WL 57039, at *2 (E.D. La. Jan. 6, 2003). Nevertheless, a motion to dismiss under Rule 12(b)(6) is viewed with "disfavor and is rarely granted." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

**B. Motion for Summary Judgment Standard**

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG*

5

*Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party initially has shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), then the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

## III. DISCUSSION

### A. Fraud Claim Asserted Against Calhoun Personally

Initially, Pelican and Calhoun move to dismiss the fraud claim asserted against Calhoun in his personal capacity because Plaintiff has failed to plead a claim for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. "[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud" when asserting a claim for fraud. Nevertheless, Rule 9(b) only requires "simple, concise, and direct allegations of the circumstances constituting fraud." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). In interpreting Rule 9(b), the Fifth Circuit has required the plaintiff "to plead the time, place, and contents of the false representation, as well as the identity of the person making the representation and what that person obtained thereby." *Id.* (internal quotation and citation omitted).

6

"However, fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence." *Shelton v. Standard/700 Assocs.*, 2001-0587, p. 5 (La. 10/16/01); 798 So.2d 60, 64 (citing La. Civ. Code. art. 1957). If a plaintiff fails to state a fraud claim with particularity, then the claim must be dismissed for failure to state a claim. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 (5th Cir. 2009).

Under Louisiana law, an officer of a corporation cannot be held personally liable for the acts of the corporation unless the officer engages in fraud, malfeasance, or other wrongdoing. *Automatic Coin Enter., Inc. v. Vend-Tronics, Inc.*, 433 So.2d 766, 767 (La. Ct. App. 1983). Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. Thus, in order to prevail on a fraud claim under Louisiana law, a plaintiff must demonstrate: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Curtist v. Blue Cross Blue Shield of La.*, 07-782, p. 12 (La. App. 3 Cir. 12/12/07); 971 So.2d 1249, 1256 (citations omitted). However, an action for fraud will not lie if a party "could have ascertained the truth without difficulty, inconvenience, or special skill." La. Civ. Code art. 1954.

Generally, "[f]raud cannot be predicated on statements that are promissory in nature or relating to future events." *Taylor v. Dowling Gosslee & Assocs., Inc.*, 44,654, p. 13-14 (La. App. 2 Cir. 10/7/09); 22 So.3d 246, 255. Louisiana courts have reasoned that fraud cannot be established by the failure to perform an event in the future because "a representation that something will be done

7

in the future or a promise to do it from its nature, cannot be true or false at the time when it is made." *Colorado Milling & Elevator Co. v. Rapides Grocery Co.*, 142 So. 626, 629 (La. App. Cir. 1932). Rather, the "failure to make it good is merely a breach of contract which must be enforced by an action on the contract, if at all." *Id.* Thus, in order for statements to be fraudulent, the statements must relate to facts existing at the time the promise is made or to facts that previously existed. *Bass v. Coupel*, 93-1270 (La. App. 1 Cir. 6/23/95); 671 So.2d 344, 351-52. For example, in *America's Favorite Chicken Co. v. Cajun Enterpises, Inc.*, a franchisor sued a franchisee in order to recover on past due royalties. *America's Favorite Chicken Co. v. Cajun Enters. Inc.*, 130 F.3d 180, 181 (5th Cir. 1997). The franchisee filed a counterclaim against the franchisor, alleging that the franchisor fraudulently had induced the franchisee to enter into the agreement by misrepresenting sale figures, expenses, and profits. *Id.* at 186. Specifically, the franchisee argued that the franchisor had misrepresented that the San Francisco franchisee could expect sales similar to those in Washington, D.C. and had stated that sales definitely would increase. *Id.* The Fifth Circuit ruled that these statements did not constitute fraud under Louisiana law because the statements were "nothing more than projections of future events" and "not actionable as fraud." *Id.*

Nevertheless, fraud "may be predicated on promises made with the intention *not* to perform *at the time* the promise is made." *Automatic Coin Enter., Inc.*, 433 So.2d at 768 (emphasis added). Such promises "constitute a misrepresentation of a present rather than a future fact." *Id.* "The fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge, or as to which he professed to have special knowledge." *Johnson v. Mansfield Hardwood Lumber Co.*, 159 F. Supp. 104, 124 (W.D. La. 1958). As a result, a plaintiff must prove

8

that the defendant intended to commit fraud at the time the statements were made in order to prevail on a fraud claim. *See Williamson v. Haynes Best Western of Alexandria*, 95-1725 (La. App. 4 Cir. 1/29/97); 688 So.2d 1201, 1239.

Because Calhoun cannot be held personally liable for the acts of Pelican, Plaintiff only may recover from Calhoun personally if he can demonstrate that Calhoun committed fraud. *See Automatic Coin Enter., Inc.*, 433 So.2d at 767. The Court concludes that Plaintiff has failed to state a claim for fraud against Calhoun personally as a matter of law because Calhoun's alleged statements relate to future events, and thus, are not actionable as fraud under Louisiana law. Plaintiff's fraud claim against Calhoun closely resembles the fraud allegations raised in *America's Favorite Chicken Co*. As in *America's Favorite Chicken Co.*, Plaintiff contends that Calhoun fraudulently induced him to enter into a contract by misrepresenting sale figures and expected royalties. Like in *America's Favorite Chicken Co.*, Plaintiff also states that Calhoun committed fraud when he promised increased sales and a minimum royalty payment of $4,000 annually. In accord with the Fifth Circuit's reasoning in *America's Favorite Chicken Co.*, this Court finds that Calhoun's statements do not constitute fraud under Louisiana law because his statements were "nothing more than projections of future events" and aspriational at best. Moreover, Calhoun specifically noted that his initial figures were rough estimates given that he was lacking exact figures.

In addition, there is no evidence that Calhoun did not intend to pay Plaintiff the royalty payments promised at the time those statements were made. At the time Calhoun made those statements, he had no knowledge that Plaintiff would not earn the royalty amounts promised or that Pelican would be required to deduct inventory fees from Plaintiff's royalty payments. On the contrary, there is evidence that Calhoun intended for Pelican to comply with the contract given that

Pelican included Plaintiff's works in its catalogs, it reprinted Plaintiff's works, and it issued royalty payments to Plaintiff albeit lower than the $4,000 annual royalty payments. At best, Plaintiff's allegations state an action for breach of contract based on Pelican's alleged failure to perform as promised. Furthermore, Plaintiff was made aware by the plain terms of the contract under Section 15 that his royalty payments could be reduced if he owed Pelican fees, expenses, or payment for copies of his works. *See* La. Civ. Code art. 1954 (providing that fraud does not vitiate consent if the truth could have been ascertained without difficulty, inconvenience, or special skill).

      Additionally, Calhoun did not commit fraud by charging Plaintiff for retaining his books given that Plaintiff had agreed to deliver his existing inventory of books to Pelican under Section 2(e) and Section 5 of the contract. *See In re Cajun Electric Power Co-op, Inc.*, 791 F.3d 353, 359 (5th Cir. 1986) (noting that Louisiana law presumes that a party who has signed a contract has read the contract). Nevertheless, Plaintiff argues that he was allowed to retain some books for his personal sales and other small events. Although Plaintiff was allowed to promote his books at book signings and other small events, Plaintiff specifically agreed under Section 6 of the contract that all of his works would be purchased through Pelican or that he would resell his books after purchasing them from Pelican at a 50% discount under Section 14. Thus, with the exception of the ten free books provided to Plaintiff under Section 14 of the contract, all books were to be purchased through Pelican. As a result, no fraud was committed by charging Plaintiff for retaining any books that he may have retained. Whether Plaintiff in fact retained his books and whether the amount charged by Pelican was accurate relate to issues of breach. Based on the foregoing, Plaintiff has failed to assert a fraud claim against Calhoun in his personal capacity as a matter of law. Thus, the motion for judgment on the pleadings is granted.

**B. Fraud Claim Asserted Against Pelican**

For the same reasons that Plaintiff has failed to state a claim for fraud against Calhoun personally, he also has failed to state a claim for fraud against Pelican. Therefore, Pelican is entitled to summary judgment on the fraud claim.

**C. Breach of Contract Claim Asserted Against Pelican**

In addition to the fraud claims asserted, Plaintiff also has asserted a claim for breach of contract against Pelican for failure to pay royalties owed under the publishing contract. Both Plaintiff and Pelican move for summary judgment on the issue of breach. Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. "A contract has the effect of law between the parties." *United States Fid. & Guar. Co., v. Diggs*, No. 03-1023, 2004 WL 32917, at *4 (E.D. La. Jan 5, 2004). In order to prevail on a breach of contract claim, the plaintiff must demonstrate three elements: (1) that the obligor undertook an obligation to perform; (2) that the obligor failed to perform the obligation (the breach); and (3) that the failure to perform resulted in damages to the obligee. *Graco, Inc. v. Rob's Cleaning & Powerwash, Inc.*, 08-1249, p.7 (La. App. 4 Cir. 2009); 12 So.3d 386, 391. In the instant case, it is undisputed that Pelican undertook an obligation to perform by agreeing to pay Plaintiff $4,000 in royalties annually under the contract for a period of ten years. Nevertheless, the parties dispute whether Pelican failed to perform its obligation to pay the annual $4,000 royalty payments. Specifically, Pelican contends that it was allowed to deduct inventory costs from Plaintiff's royalty payments pursuant to the contract. Conversely, Plaintiff argues that he never agreed to supply Pelican his book inventory.

Although it is clear that Plaintiff did not receive the minimum $4,000 annual payments, it

must be determined whether Pelican was allowed to deduct amounts from Plaintiff's royalty payments or whether Pelican breached the contract by failing to make the minimum annual royalty payments. In order to ascertain whether Pelican failed to perform under the contract, the Court must examine and interpret the language of the contract. Interpretation of a contract is based on the common intent of the parties. La. Civ. Code art. 2045. Whether a contract is ambiguous is a question of law. *Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 578 (E.D. La. 2001). "When the words of a contract are clear and unambiguous and lead to no absurd consequences, the Court will discern the contract's meaning and the parties intent within the four corners of the document." *Id.* (citing La. Civ. Code arts. 1848, 2046). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code. art. 2047. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. Doubtful provisions are "interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code. art 2053. "A contract is ambiguous . . . when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Lloyds of London v. Transcon. Gas Pipe Line Corp.,* 101 F.3d 425, 429 (5th Cir.1996) (citing *Am. Druggists Ins. Co. v. Henry Contracting, Inc.,* 505 So.2d 734, 737 (La. App. 3 Cir.1987))."[I]f after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter." *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, (La. 1/14/94); 630 So.2d 759, 764 (citation omitted).

After reviewing the publishing contract and applying the foregoing principles of contract

interpretation, the Court concludes that genuine issues of material fact exist as to whether Pelican failed to perform under the contract. Based on a plain reading of the contract, Section 13(b) required Pelican to pay Plaintiff a minimum royalty payment of $4,000 per year for ten years. However, Section 15 permitted Pelican to deduct fees and other expenses paid by Pelican on Plaintiff's behalf and to deduct any copies of the works purchased by Plaintiff. Based on a review of the evidence submitted, the Court finds that there is a factual dispute concerning whether Pelican paid expenses on Plaintiff's behalf and whether Plaintiff purchased copies from Pelican. Even though Plaintiff was required to deliver all his existing works to Pelican's warehouse under Section 2(e) of the contract and Pelican was to distribute Plaintiff's existing stock of works under Section 5 of the contract, it is unclear how many books Plaintiff had at the time the contract was entered into on January 1, 2008. The contract does not indicate the amount of Plaintiff's inventory. Although Pelican submits Plaintiff's inventory lists from July 2007, it is unclear whether Plaintiff's inventory remained the same six months later on January 1, 2008. In fact, Pelican's proposal suggests that Plaintiff's inventory amount was subject to change between July and December and specifically states that "whatever numbers" of Plaintiff's works remain will be shipped in December of 2007. (Calhoun Aff. Ex. 1.) Moreover, the inventory figures submitted by Pelican are inconsistent and differ significantly. For example, Pelican's proposal shows that Plaintiff allegedly retained 196 copies of *Son of the South* and 224 copies of *Truth About Slavery* in July 2007. (*See id.*) However, the inventory count for 2008 shows that Plaintiff had 87 copies of *Son of the South* and 588 copies of *Truth About Slavery* in July of 2007. (*Id.* at Ex. 4.) Also, the inventory figures that Pelican billed Plaintiff for do not correspond with the prior inventory figures in the proposal and in the 2008 inventory count. (*See id.* at Ex. 5.)

In addition, Section 14 of the publishing contract specifically granted Plaintiff the right to retain ten copies of his works without charge. Based on a review of Pelican's accounting records, it is unclear whether this amount was credited to Plaintiff. Because Plaintiff's inventory figures are unclear, it cannot be determined whether Plaintiff failed to deliver copies of his works to Pelican and whether Pelican was permitted to charge Plaintiff for allegedly retaining inventory. Moreover, it is unclear whether the amounts deducted from Plaintiff's royalty payments are accurate given the various inventory figures submitted. Given these factual issues, neither Plaintiff nor Pelican is entitled to summary judgment on the breach of contract claim.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that **Motion for Judgment on the Pleadings (Rec. Doc. 13)** filed by Defendants, Pelican Publishing Company, Inc. and Milburn Calhoun is **GRANTED**;

**IT IS FURTHER ORDERED** that the fraud claim asserted against Milburn Calhoun in his personal capacity is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 19)** filed by Plaintiff, Gary C. Walker, is **DENIED**;

**IT IS FURTHER ORDERED** that the **Cross Motion for Summary Judgment (Rec. Doc. 29)** filed by Pelican Publishing Company, Inc. and Milburn Calhoun is **GRANTED IN PART** and

**DENIED IN PART**. The motion is granted to the extent that Pelican is not liable for fraud. The motion is denied as to Pelican's liability for breach of contract.

This 21st day of July 2011.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE